



JKMcD:ASJZ:SRD: 2020CR00686

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. <u>DLB-21-0399</u> |
| | * | |
| v. | * | (Wire Fraud, 18 U.S.C. § 1343; Theft |
| | * | in Programs Receiving Federal Funds, |
| ROY C. McGRATH, | * | 18 U.S.C. § 666(a)(1)(A); Falsification |
| | * | of Records, 18 U.S.C. § 1519; |
| Defendant. | * | Forfeiture.) |
| | * | |

\*\*\*\*\*\*

## SUPERSEDING INDICTMENT

The Grand Jury for the District of Maryland charges:

### Background

At all times material to the Superseding Indictment:

1. In 1970, the Maryland General Assembly created Maryland Environmental Services ("MES") as a corporation wholly owned by the State of Maryland to provide environmental services such as water and wastewater management, solid waste management, composting, recycling, dredged material management and other services to state and local government agencies, federal government entities, and private clients.

2. MES was headquartered in Anne Arundel County, Millersville, MD; its operating funds were generated by grants from government agencies and fees charged to governmental and private clients for its services.

3. MES was governed by an Executive Director, who was a member of a nine-member Board of Directors. The Governor of Maryland with the advice and consent of the Maryland Senate appointed the Executive Director of MES who served at the pleasure of the Board with the concurrence of the Governor. The Governor also appointed five other directors with the advice

1

and consent of the Senate who served staggered four-year terms. The Executive Director appointed the Deputy Director, Secretary, and Treasurer with the approval of the Governor; they served on the Board of Directors at the pleasure of the Executive Director. The Board of Directors had a three-member Human Resources Committee to consider personnel matters.

4. MES functioned as an independent state corporation or state agency; MES did not pay its employees according to the state government pay scale, but MES employees were subject to state travel regulations including per diem limits, the requirement to submit expense report forms within five business days of completion of travel and supported by itemized receipts, and state policies regarding taking annual leave, compensatory leave, and time and attendance reporting. After July 2019, MES employees maintained their official time and attendance records through a software system called "Workday."

5. MES maintained its bank accounts at Bank of America; the accounting department of MES issued instructions via interstate wire from Millersville, MD to the Bank of America server in Virginia to direct the payment of travel expense reimbursements and salary payments to its employees through direct deposit into their bank accounts.

6. MES received benefits through federal grant support and other funding from agencies of the United States, including the Environmental Protection Agency, the Department of the Interior and the Department of Transportation. For example, MES received grant funding from the Environmental Protection Agency pursuant to the Diesel Emissions Reduction Act for the upgrading or replacement of trucks, engines, forklifts, and yard tractors in and around the Port of Baltimore in the amounts shown below per calendar year:

| Calendar Year | Total Federal Funds |
|---|---|
| 2018 | $262,491.24 |
| 2019 | $1,857,417.04 |
| 2020 | $832,903.59 |

7. The Academy Art Museum, 106 South Street, Easton, Maryland was founded in 1958 to create a place dedicated to the knowledge, practice, and appreciation of the arts. It is accredited by the American Alliance of Museums and houses a permanent collection of paintings, drawings photographs, and prints. The Academy Art Museum hosted national and regional exhibitions, concerts, lectures, education programs, and visual and performing arts classes for adults and children. The Museum collaborated with other non-profit organizations to host events in the annual Waterfowl Festival, Plein Air Competition and Arts Festival, Chesapeake Film Festival and Chesapeake Chamber Music Festival. The Museum was governed by a Board of Directors who generally pledged and paid monies personally to support the work of the Museum.

## The Defendant

8. **ROY C. McGRATH** ("**McGRATH**") was appointed by the Governor of Maryland in December 2016 to serve as Executive Director of MES. In March 2017, **McGRATH** was confirmed by the Maryland Senate; he resigned as of May 31, 2020 to become the Governor's Chief of Staff effective as of June 1, 2020.

9. MES paid **McGRATH** an annual salary plus bonuses:

| YEAR | SALARY | BONUS |
|---|---|---|
| 2017 | $199,299.02 | $30,000 |
| 2018 | $219,549.68 | $43,000 |
| 2019 | $228,811.20 | $44,932 |
| 2020 | $233,647.23 left MES partway through 2020 | left MES before bonus awarded |

10. **McGRATH** maintained a personal bank account ending in ***5782 at SunTrust Bank, Parole, Maryland. McGrath directed MES to direct deposit his salary, bonuses, and travel reimbursements into the ***5782 account.

11. **McGRATH** was an agent and fiduciary of MES and owed MES a duty of loyalty to conduct its business for the benefit of MES and to advance the interests of MES.

### The Scheme to Defraud

12. From in and around March 2019 through in and around December 2020, in the District of Maryland, the Defendant

### ROY C. McGRATH

knowingly and willfully devised and intended to devise a scheme and artifice to defraud MES and the State of Maryland of money and property through materially false and fraudulent pretenses, representations and promises, including the concealment and omission of material information (hereafter "Scheme and Artifice to Defraud").

### The Purpose of the Scheme and Artifice to Defraud

13. The purpose of the Scheme and Artifice to Defraud was for **McGRATH** to enrich himself personally by using his positions of trust as the Executive Director of MES and the chief of staff for the Governor of Maryland to cause MES to make payments on **McGRATH**'s behalf or to **McGRATH** personally to which he was not entitled, to cause the MES Board of Directors to vote for benefits for **McGRATH** based on false and misleading information, to cause MES to pay personal benefits for **McGRATH** after he left MES through **McGRATH**'s own approval of remimbursements for payments made by Subordinate Employee #1 on **McGRATH**'s behalf, and to conceal the payments and circumstances surrounding the payments from the Governor of Maryland and the MES Board of Directors.

## Manner and Means of the Scheme to Defraud

14. It was a part of the Scheme and Artifice to Defraud that **McGRATH** submitted through Workday false time and attendance reports while he was on vacation resulting in overpayments to him.

15. It was a part of the Scheme and Artifice to Defraud that **McGRATH** caused MES funds to be paid to the Academy Art Museum where he was a member of the Board of Directors in place of **McGRATH**'s using personal funds to pay his pledge to the Academy Art Museum.

16. It was a part of the Scheme and Artifice to Defraud that on May 18, 2020, while **McGRATH** was the Executive Director of MES, he interviewed with the Governor of Maryland regarding changing jobs within State Government and moving from MES to become the Governor's Chief of Staff.

17. It was a part of the Scheme and Artifice to Defraud that **McGRATH** wanted to receive a salary as Chief of Staff which matched his MES yearly salary of $233,647.23 as well as a "severance payment" from MES in the amount of his yearly salary as MES Executive Director or $233,647.23.

18. It was a part of the Scheme and Artifice to Defraud that **McGRATH** claimed to the Governor and to a member of the Board of Directors of MES that becoming Chief of Staff would require taking a substantial pay cut from his MES salary.

19. It was a part of the Scheme and Artifice to Defraud that **McGRATH** failed to disclose to the Governor the material fact that he intended to seek from the MES Board of Directors a "severance payment" from MES in the amount of his yearly salary as MES Executive Director or $233,647.23.

20. It was a part of the Scheme and Artifice to Defraud that following **McGRATH**'s meeting with the Governor, **McGRATH** texted State Official #1 that he would accept the job as Chief of Staff. **McGRATH** texted State Official #1 that his yearly salary at MES was $233,647.23. State Official #1 emailed State Official #2 and copied **McGRATH** stating that **McGRATH** "and the Governor have agreed to a salary of approximately $233,000," and **McGRATH** did not correct the statement.

21. It was a part of the Scheme and Artifice to Defraud that **McGRATH** requested through members of the MES Board of Directors a "severance payment" in the amount of his yearly salary as MES Executive Director or $233,647.23.

22. It was a part of the Scheme and Artifice to Defraud that **McGRATH** became aware that the Board of Directors of MES was reluctant to vote such a generous severance for him unless and until the Governor approved a payment to **McGRATH** in the amount of his yearly salary as MES Executive Director or $233,647.23.

23. It was a part of the Scheme and Artifice to Defraud that to a member of the Board of Directors of MES, **McGRATH**

a. falsely represented that the Governor knew of **McGRATH**'s request to the MES Board of Directors for a "severance payment" in the amount of his yearly salary as MES Executive Director or $233,647.23 and

b. falsely represented that the Governor approved of the "severance payment" in the amount of **McGRATH**'s yearly salary or $233,647.23.

24. It was a part of the Scheme and Artifice to Defraud that **McGRATH** falsely represented to a member of the MES Board of Directors that **McGRATH** was taking a pay cut from his MES salary to become the Chief of Staff of the Governor.

25.     It was a further part of the Scheme and Artifice to Defraud that when a member of the MES Board of Directors texted **McGRATH:**

> Hi, the HR committee wants to make sure that the governor would be OK with you receiving severance equal to one year's pay. They are worried about the optics and don't want to do anything to make the Governor look bad. I told them that I thought that the governor was aware and was OK with it. Correct?

**McGRATH** falsely responded:

> It's anticipated, yes. Not to mention the precedences [sic]

26.     It was a part of the Scheme and Artifice to Defraud that **McGRATH** caused members of the Board of Directors to falsely report to the full Board of Directors at their meeting on May 28, 2020, that the Governor had approved, or was aware of and consented to, the payment to **McGRATH** of $233,647.23 or an amount equal to his yearly salary as MES Executive Director.

27.     It was a part of the Scheme and Artifice to Defraud that at their meeting on May 28, 2020, relying upon the false text messages and statements of **McGRATH** regarding the Governor's knowledge and approval of a "severance payment" from MES in the amount of his yearly salary as MES Executive Director or $233,647.23, the MES Board of Directors unanimously voted for **McGRATH** to receive a severance payment of an amount equal to one year's salary, which was $233,647.23, plus tuition reimbursement in the amount of $5,250, which amounts were rounded up to $239,000, plus the continued use of **McGRATH**'s MES-issued laptop computer and cell phone in his new position as the Governor's Chief of Staff.

28.     It was a part of the Scheme and Artifice to Defraud that on May 28, 2020, at the MES Board of Directors meeting, **McGRATH** did not include in his request to the MES Board of Directors a request for $14,475 to pay his tuition for the Harvard Kennedy School Executive Education program for May 31, 2020 – June 26, 2020, which program would occur following the end of **McGRATH's** employment at MES.

7

29. It was a part of the Scheme and Artifice to Defraud that during the evening of May 28, 2020, **McGRATH** asked Subordinate #1, whom he supervised at MES, to pay his Harvard Kennedy School invoice HKSEE014115 in the total amount of $14,475.

30. It was a part of the Scheme and Artifice to Defraud that on May 28, 2020, **McGRATH** emailed Subordinate #1 a copy of invoice HKSEE014115 in the total amount of $14,475.

31. It was a part of the Scheme and Artifice to Defraud that Subordinate #1 paid Invoice HKSEE014115 in the total amount of $14,475 for **McGRATH's** Harvard Kennedy School program with a personal credit card.

32. It was a part of the Scheme and Artifice to Defraud that the following day, on May 29, 2020, Subordinate #1 submitted an expense report to MES on its computerized expense reimbursement system for reimbursement of the $14,475 Subordinate #1 had paid on **McGRATH's** behalf.

33. It was a part of the Scheme and Artifice to Defraud that also on May 29, 2020, **McGRATH** approved the expense report of Subordinate #1, including the payment of $14,475 to Subordinate #1 of MES funds to reimburse Subordinate #1 for his expenditure on **McGRATH's** behalf.

34. It was a part of the Scheme and Artifice to Defraud that MES reimbursed Subordinate #1 $14,475 for his payment on **McGRATH's** behalf.

35. It was a part of the Scheme and Artifice to Defraud that **McGRATH** attended the Harvard Kennedy School Program following his resignation from MES.

36. On June 17, 2020, Subordinate Employee #1 texted **McGRATH** and asked whether **McGRATH** would like to review the minutes from the Board of Directors meeting in May [where the severance package was approved]; **McGRATH** texted in response, "Yes . . . offline."

37. In and around June 27, 2020, through Subordinate Employee #1, **McGRATH** proposed that the public version of the minutes of Board of Directors' meeting of May 28, 2020, would state only that a "motion [was made] that the Board enter closed session to discuss the compensation of a specific employees [sic] of the Maryland Environmental Service." **McGRATH** attempted to delete, or cause to be deleted, from the proposed public minutes any mention of compensation of either **McGRATH** or compensation of the Executive Director of MES, or the amount $233,647.23, or the description of the compensation as a "year's salary."

38. It was a further part of the Scheme and Artifice to Defraud that in early August 2020, when the Governor first became aware of the fact and amount of the "severance payment" from MES to **McGRATH**, the Governor asked **McGRATH** about the fact and the amount of the "severance payment." **McGRATH** falsely responded to the Governor that the MES Board of Directors had **offered** him the "severance payment" in accordance with their usual practice. **McGRATH** further concealed from the Governor that **McGRATH** had falsely represented to members of the MES Board of Directors, and caused them to falsely represent to the entire Board, that the Governor was aware of, and consented to, the proposed payment to **McGRATH** of a "severance payment" from MES in the amount of his yearly salary as MES Executive Director or $233,647.23.

## COUNTS ONE - FIVE

39. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant

### ROY C. McGRATH

for the purpose of executing the Scheme and Artifice to Defraud and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, and sounds, namely:

9

| Count | Interstate Transmission | Description of Interstate Transmission |
|---|---|---|
| 1 | 5/27/2020 | Interstate text message from **McGRATH** to a member of the MES Board of Directors who had stated "the governor was aware [of the year's salary as a severance payment] and was OK with it. Correct?" to which McGRATH replied: "It's anticipated, yes. Not to mention the precedences [sic]" |
| 2 | 5/28/2020 | Interstate Email from **McGRATH** in Maryland to Subordinate #1's personal email account in Washington, D.C., sending Harvard Kennedy School Invoice HKSEE014115 in the total amount of $14,475 |
| 3 | 6/5/2020 | MES Accounting Department, Millersville, MD electronic instruction to Bank of America ACH Payment System, Virginia to transfer $14,970 to the bank account of Subordinate #1, which included reimbursement for $14,475 |
| 4 | 6/10/2020 | MES Accounting Department, Millersville, MD electronic instruction to Bank of America ACH Payment System, Virginia to transfer $125,517.79 to **McGRATH**'s Suntrust Bank account ending in **** 5782, a portion of the approved severance payment of $233,647.23. |
| 5 | 6/27/2020 | Subordinate #1's email from Washington, D.C. to a paralegal located in Maryland: "we have some additional edits to the May BOD [Board of Directors] minutes" |

18 U.S.C. § 1343

## COUNTS SIX – SEVEN

1. The allegations of Count 1, Paragraphs 1-11 are hereby incorporated by reference.

2. In each twelve-month period set forth below, in the District and Maryland and elsewhere, the Defendant

## ROY C. McGRATH

who was an agent of an organization, namely MES, which received federal benefits in excess of $10,000 in the twelve-month periods set forth below, embezzled, stole, obtained by fraud, and intentionally misapplied property, including funds, of MES valued at $5,000 or more:

| Count | Calendar Year | Misapplied Funds | Method |
|---|---|---|---|
| 6 | 2019 | a. Salary in the approximate amount of $6,526.36<br><br>b. $15,000<br><br>c. Salary in the approximate amount of $1,729.88 | a. **McGRATH**'s failure to take annual leave while on a vacation cruise to Spain, France & Italy from 8/3/2019 – 8/13/2019;<br><br>b. Use of MES funds to pay **MCGRATH**'s personal pledge to Academy Art Museum;<br><br>c. **McGRATH**'s failure to take annual leave while on a vacation in Naples, FL from December 26 – 30, 2019. |
| 7 | 2020 | a. $233,647.23<br><br>b. $14,475.00 | a. Causing Board of Directors of MES to rely on false and fraudulent information to approve payment of a year's salary of $233,647.23 to **McGRATH** as a severance payment;<br><br>b. Causing MES to reimburse Subordinate #1 for his payment of **McGRATH**'s personal expense, namely $14,475 in tuition expenses for the Harvard Kennedy School of Government. |

18 U.S.C. § 666 (a)(1)(A)

11

## COUNT EIGHT

1. The allegations of Count 1, Paragraphs 1-11, 16-27, and 36-38 are incorporated here by reference as though fully set forth.

2. In and around August 2020, press accounts of the MES payment of one year's salary or $233,647.23 to **McGRATH** as a severance payment were published.

3. In and around August 17, 2020, **McGRATH** secretly recorded a telephone conference call in which he participated with other advisors to the Governor of Maryland. In response to a question from a participant, whether there was an "email or anything like that, that the guv signed off on," **McGRATH** responded, ". . . it wasn't from me if there was."

3. In and around August 17, 2020, **McGRATH** resigned from his position as Chief of Staff of the Governor of Maryland.

4. Investigations of **McGRATH**'s conduct were initiated by the Legislative Policy Committee of the Maryland General Assembly which convened the Joint Committee on Fair Practices and State Personnel Oversight for that purpose, the Office of the State Prosecutor, and the Federal Bureau of Investigation.

5. On or about September 2, 2020, in the District of Maryland, the defendant

### ROY C. McGRATH

knowingly falsified and made false entries in the following document, which falsely purported to be a memorandum to the Governor of Maryland, falsely dated May 18, 2020, and which contained a blue check mark, as characteristically used by the Governor, in the box for "approved" to create the false appearance that the Governor had seen and approved the memorandum:

**MEMO**

**DATE:** May 18, 2020

**TO:** Governor Hogan

**RE:** EMPLOYMENT AGREEMENT – ROY MCGRATH

**Position:** Chief of Staff, Maryland Office of the Governor

**Start Date:** TBD

**Salary:** $233,647.23

**Other Compensation:** Severance package from MES

**Terms:** Through end of Administration (January 2023)

Cancellable upon mutual agreement

Telework as needed

☑ Approved

☐ Disapproved

☐ Needs Further Discussion

with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, a department and agency of the United States, and in relation to and contemplation of any such matter.

18 U.S.C. § 1519

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of a defendant's conviction of any of the offenses charged in Counts One – Seven.

2. Upon conviction of any of the offenses set forth in Counts One – Seven of this Indictment, the defendant,

### ROY C. McGRATH

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

3. The property to be forfeited includes, but is not limited to, the following:

   a. a money judgment in the amount of proceeds the defendant obtained as the result of his offenses of conviction; and

   b. up to $119,000 in proceeds transferred to the Defendant's TD Ameritrade account ending in ***3059.

### Substitute Assets

4. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853(p); 28 U.S.C. § 2461(c)

*Philip A. Selden* /jkmcd
Philip A. Selden
First Assistant United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

6/28/2022
Date

15