IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROY C. McGRATH,<br><br>Defendant. | CRIMINAL NO.  <u>DLB-21-0399</u> |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE REQUESTING EXCLUSION OF CERTAIN PROPOSED RULE 404 (B) EVIDENCE

Comes now the United States of America, by and through Philip A. Selden, First Assistant United States Attorney, Joyce K. McDonald and Aaron S.J. Zelinsky, Assistant United States Attorneys, and Sarah R. David, Special Assistant United States Attorney, and files this response to Defendant's Motion in Limine Requesting Exclusion of Certain Proposed Rule 404 (B) Evidence.

Defendant has called his pleading a "Motion to Exclude Proposed Rule 404(B) Evidence." Rule 404(b), Fed.R.Evid., proscribes evidence of "other crimes, wrongs, or acts" than the ones for which a defendant is indicted.  The Defendant's Motion does not seek to exclude evidence covered by Rule 404(b); the Motion is addressed not to **other crimes**, but to **other investigations of the same crimes** charged in the Superseding Indictment.

The Government agrees with Defendant that "it would be inappropriate for any government witness to offer evidence that there is a collateral prosecution of Mr. McGrath in the State of Maryland or that there is an 82 page report authored by the General Assembly Joint Committee on Fair Practices and State Personnel Oversight."  ECF 35 at 3. The Government will **not** seek to enter into evidence either the State Indictment or the Report of

1

the General Assembly Joint Committee on Fair Practices and State Personnel Oversight ("Joint Committee").  But the inadmissibility of the **conclusions** of the investigations is because the conclusions are inadmissible hearsay.  The inadmissibility of the State indictment or Joint Committee Report does not mean that the **fact** that the investigations occurred is equally inadmissible.  And admissibility would not, in any event, be determined pursuant to Rule (404)(b).

### Factual Background

As the Superseding Indictment charges, the Defendant's initial effort to control the news that he had been voted a payout of $233,648 by the Board of Directors of the Maryland Environmental Service was his effort through a subordinate to control the minutes of the Board of Directors' closed session on May 28, 2020.  Count 1, ¶¶36 – 37; Count 5.  That effort was not totally successful. The public version of the minutes of the closed Board of Directors meeting held on May 28th reported that the Director had been voted a year's salary just before taking a new job in State government.  The minutes did not identify the Defendant by name, did not identify his new job in State government, and did not attach any figures to the descriptor "a year's salary."  The minutes of the May meeting were approved by the Board of Directors at their June meeting and were posted to the MES website in late June or early July 2020.

In early August 2020, word began to circulate that a Baltimore Sun reporter was asking questions about the payout, and on August 15, 2020, the Baltimore Sun published its first story about payment of the severance; the story was picked up by the Washington Post.  Count 8, ¶2.  These press accounts caused high-ranking officials in State government to hold a telephone conference call with the Defendant on August 17, 2020, to discuss the MES payout

with him. Count 8, ¶3. The Defendant secretly recorded the telephone call including his own statements about the payout. *Ibid.* In the telephone call, the Defendant and others discuss the fact that the Maryland Legislature is opening an investigation and planning to hold hearings on the payout and other financial issues at MES. Count 8, ¶4. The Defendant resigned his position as Chief of Staff on that day, August 17, 2020.

The first of the legislative hearings was held on August 25, 2020—a week after the recorded telephone call and a week after the Defendant's resignation. Shortly before the hearing began, the Governor's Office issued a press release in which the Governor stated that he did not know in advance about the MES payout of a year's salary to the Defendant and did not approve it. Members of the MES Board of Directors then testified at the legislative hearing that McGrath had represented to them that the Governor knew about the payout of one year's salary or $233,648 and approved of it. The hearings were continued a week until September 2, 2020. On that date, the former Deputy Director of MES under McGrath testified. Shortly before the testimony began, the first photograph of the memorandum charged as a false document in Count 8 was taken, according to metadata from the phone and from Defendant's iCloud account. The photographs that follow the alleged false document on the telephone are photographs of the computer screen of the Joint Committee's hearing including photographs of hearing exhibits shown on screen. Those photographs are also time-stamped for September 2, 2020. The former Deputy Director testified before the Joint Committee regarding her text message exchange with the Defendant charged in Count 1, ¶¶25, 26 and Count 1 charge.

Despite photographing the alleged false document on September 2, 2020, the Defendant did not use the alleged false document in any way the Government has identified

3

until the Grand Jury returned the initial Indictment on October 5, 2021. ECF 1. The Defendant then gave interviews to the Washington Post and the Baltimore Sun reporters and provided the alleged false document to them. The articles with the false document included appeared on November 5, 2021. On June 28, 2022, the Grand Jury returned the Superseding Indictment charging the Defendant with the creation of a false document in and around September 2, 2020. ECF 27, Count 8.

### Analysis

Defendant's motion purports to ask this Court to exclude Rule 404 (b) evidence, but in fact asks this Court to exclude evidence specifically alleged in the Superseding Indictment and investigations related to the same behavior for which the Defendant is indicted rather than the "other crimes, wrongs or acts" the Rule contemplates. Evidence intrinsic to the offense charged is not "other crimes" evidence subject to Rule 404 if the uncharged conduct "arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial." *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir.1994) (internal quotation marks and alterations omitted); *see also United States v. Chin*, 83 F.3d 83, 88 (4th Cir.1996) ("Other criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." (internal quotation marks omitted)). In this case, the actions were not "necessary preliminaries" to the crime charged, but a cover up which involved ultimately the creation of a false document, Count 8, and over a year later, the use of that document.

An important distinction exists between *extrinsic* evidence (which is subject to Rule 404 (b)), and *intrinsic* evidence (which is not subject to rule 404 (b)). "Bad acts are intrinsic

to the charged offense 'when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *United States v. Denton*, 944 F.3d 170, 185-86 (4th Cir 2019). Bad acts are "inextricably intertwined with the evidence regarding the charged offense if [they] form an integral and natural part of the witness's accounts of the circumstances surrounding" the charged offense of offenses. *Id*. at 185-186. The Fourth Circuit has further explained that evidence of bad acts is intrinsic where it is essential "to the story of the crime" or it provides "context" for the charged offenses. *See*, *e.g.*, *United States v. Bush*, 944 F.3d 189, 194-96 (4th Cir. 2020).

In the instant case, the Government seeks to introduce into evidence the circumstances surrounding the Joint Committee's hearings on August 25th, September 2nd, and December 16th. The investigation by the Joint Committee is not another, different crime but a prompt, public investigation of the Defendant's conduct. The fact and the gist of the Joint Committee testimony is necessary evidence to provide the context for a text message the Defendant sent on the evening of August 25th to a State official in reaction to the testimony. And on September 2, 2020, the Joint Committee's investigation created pressure on the Defendant which he responded to by creating the false document charged in Count 8. As is often the case, the cover up is both a crime in itself and evidence of consciousness of guilt of the original offense.

The legislative hearings and the State's investigation are essential evidence in the timeline of charges alleged in the indictment. Some of the witnesses the Government intends to call at trial testified under oath at the Joint Committee's hearings. Although the testimony is hearsay unless the declarant testifies in the instant trial, the Government plans to call witnesses from the MES Board of Directors to testify regarding representations made to them by the

Defendant.

The Defendant has been charged in a Superseding Indictment with the creation of a fraudulent document. The document was scanned into Defendant's phone at 10:34 AM on September 2, 2020, the second day of the public legislative hearings. One of the witnesses testifying in the legislative hearings, which began around noon on September 2, 2020, was the same member of the MES Board of directors, as alleged in paragraph 25 of the Superseding Indictment, who texted Defendant:

> Hi, the HR committee wants to make sure that the governor would be OK with you receiving severance equal to one year's pay. They are worried about the optics and don't want to do anything to make the Governor look bad. I told them I thought that the governor was aware and was OK with it. Correct?

As alleged in paragraph 25 of the indictment, the Defendant "falsely responded: It is anticipated, yes. Not the mention the precedences [sic]." And this text message was displayed on September 2, 2020, as a hearing exhibit-- the same day that the alleged false memo charged in Count 8 was created. The fact that there were legislative hearings involving witnesses, who were scheduled to testify on issues related to allegations against Defendant on the same day that a photograph of this document first appears on Defendant's phone, is important to show Defendant's intent in creating and photographing the fraudulent document.

The Government and, of course, the Defendant would want to use statements from witnesses before the Joint Committee for the purpose of cross examination, impeachment, and/or refreshing a witness's recollection. Excluding the evidence from those hearings would result in excluding statements on the facts of this case by witnesses made under oath at the legislative proceeding.

The State executed a search warrant on Defendant's residence on September 26, 2020. Items seized during the search include the Defendant's computers, cellular phones, as well as

documents and records necessary to the Government's case. The State warrant and the state officials who executed the warrant are essential witnesses to prove the chain of custody of the items recovered as well as other relevant testimony derived from the search. Exclusion of any mention of a state investigation would prohibit the Government from presenting evidence related the State search warrant.

After the execution of the search warrant on September 26, 2020, there were further legislative hearings, and on December 16, 2020, the Defendant himself testified, under oath and represented by counsel. The Government would not seek to use statements where Defendant invoked the Fifth Amendment and would redact any invocation from a transcript to be used in the criminal proceeding. The Government should be free, however, to use statements by Defendant when he was asked about issues directly related to the charges alleged in the Superseding Indictment.

Defendant further argues that mention of these investigations would be more prejudicial than probative. Fed. R. Evid. 403. The evidence related to the Joint Committee's investigation is direct evidence of the charges in the Superseding Indictment. The creation of a false document on September 2, 2020, did not occur in a vacuum but in the context of the second day of the legislative hearings. Any prejudice is the fair prejudice of admissible evidence of the commission of the alleged crime itself.

For the foregoing reasons, the Government respectfully requests that the Court deny the Motion to Exclude except for excluding the State Indictment and the Joint Committee's Final Report.

    Respectfully submitted,

    Philip A. Selden
    First Assistant United States Attorney

By       _____/s/_____
Joyce K. McDonald
Aaron S.J. Zelinsky
Assistant United States Attorneys

Sarah R. David
Special Assistant United States Attorney

8